UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **RUTH REGINA MOORE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**CENTERMAC REALTY, INC.**, a California registered company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Ruth Regina Moore ("Plaintiff Moore" or "Moore") brings this Class Action Complaint and Demand for Jury Trial against Defendant Centermac Realty, Inc. d/b/a Central Funding ("Defendant" or "Central Funding") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Moore, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.     Plaintiff Moore is a resident of Memphis, Tennessee.

2.     Defendant Central Funding is a California registered company headquartered in Diamond Bar, California.

1

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District where the Plaintiff resides.

## INTRODUCTION

5.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in October 2024 alone, at a rate of 158.4 million per day. www.robocallindex.com (last visited November 21, 2024).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Centermac Realty, Inc. operates using the d/b/a Central Funding:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf



14.     Defendant Central Funding is a mortgage loan originator that provides mortgage loans to consumers throughout the US.[4]

15.     Defendant Central Funding places calls and sends text messages to solicit its mortgage loan services.

16.     Defendant Central Funding places cold calls and cold texts to consumers to generate business.

17.     Defendant Central Funding hires employees from the Philippines as lead generation specialists/cold callers:

---

[3] https://www.thecentralfunding.com/
[4] Id.

**Lead Generation Specialist/Cold Caller**

Please login or register as jobseeker to apply for this job.

TYPE OF WORK
Full Time

HOURS PER WEEK
40

SALARY
352

DATE POSTED
Oct 13, 2024

📄 **JOB OVERVIEW**

Central Funding, a US-based Mortgage Broker, is looking for an individual with cheerful personality and great interaction skills to generate leads through cold calling, and text messaging. We are looking for a growth-oriented individual who aspires to reach their full potential through continual learning and growing. Successful candidates will receive a base compensation and "rewards" that are performance-based. Following up skills are a big plus for the position. Candidates with proven skills will quickly receive a pay adjustment based on the skills they possess. [5]

18.     Central Funding employees have listed cold calling as a skill used to generate business, including:

---

[5] https://www.onlinejobs.ph/jobseekers/job/Lead-Generation-Specialist-Cold-Caller-1260989

 **Gabrielle Pauline Aspera** (She/Her)
Educator | Lead Generation Specialist | Marketing and Sales Specialist | REVA | WordPress Developer | Business Owner | C

## Experience

**Virtual Assistant/Lead Generation Specialist/Social Media Engager**
Central Funding · Full-time
May 2024 - Present · 7 mos
Diamond Bar, California, United States · Remote

Research, track, maintain, and update leads.
Contact prospects to qualify leads.
Direct email marketing to key clients and prospects.
Research and maintain lead generation database.
Conduct client or market surveys to obtain information about potential leads.
Provide accurate and timely information to management.
Develop a strong knowledge of the company's products and services to facilitate the sales process.
Perform social media marketing research.
Engage with clients effectively.
CRM management.
Encourage collaboration across teams and departments.

◇ **Lead Generation, Social Media Marketing and +14 skills**

6

Aspera's Central Funding related skills include cold calling:

**Skills for Virtual Assistant/Lead Generation Specialist/Social Media Engager at Central Funding**

Virtual Assistance

Cross-functional Team Leadership

Teamwork

Administrative Tasks

Cold Calling

7

---

6 https://www.linkedin.com/in/gabrielle-pauline-aspera/?originalSubdomain=ph
7 Id.



**Bernadine Ina Cagalitan** · 3rd

I am a Fully Dedicated Virtual Assistant (Freelance)

Metro Davao · Contact info

66 connections

[Message]  [+ Follow]  [More]

**About**

I'm an experienced Virtual Assistant for 5 years with expertise in Real Estate, Administrative Assistant, Data Entry, and Cold Calling.[8]

19.     Central Funding places solicitation calls and sends text messages to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

20.     The calls and text messages that Central Funding places to consumer phone numbers are solicitations for mortgage funding.

21.     In response to these calls and text messages, Plaintiff Moore brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

<b>PLAINTIFF MOORE'S ALLEGATIONS</b>

22.     Plaintiff Moore is the sole owner and user of her cell phone number ending in 6390.

23.     Plaintiff Moore has owned her cell phone number for over 20 years.

24.     Plaintiff Moore registered her cell phone number on the DNC on December 16, 2004.

---

[8] https://www.linkedin.com/in/bernadine-ina-cagalitan-290a8b10b/?originalSubdomain=ph

25.    Plaintiff Moore uses her cell phone number for personal use only as one would use a landline telephone number in a home. She has never had her cell phone number associated with a business.

26.    Plaintiff Moore's cell phone number is registered under her personal name and is not reimbursed by any business.

27.    On November 13, 2024 at 5:04 PM, Plaintiff Moore received an unsolicited text message to her cell phone from 901-459-3419.

28.    In response, Plaintiff texted 901-459-3419 back on November 13, 2024 at 5:07 PM:



29.    At 5:10 PM on November 13, 2024, Plaintiff Moore received 2 more unsolicited text messages from 901-459-3419:







30.    At 5:11 PM on November 13, 2024, Plaintiff Moore texted 901-459-3419 back explaining that she has no plans to sell her home. 1 minute later, at 5:12 PM, Plaintiff Moore texted 901-459-3419 again asking if she is on a list:



31.    In response, Plaintiff Moore received an immediate response at 5:12 PM on November 13, 2024 soliciting a new home purchase:



That's totally fine. With very low interest rates right now, are you considering looking for a new home or perhaps a new investment property?

5:12 PM

32.     The text messages were sent by Kenny Tan:





# Kenny Tan

Certified Mortgage Advisor / Loan Officer
NMLS#: 1371528
Phone: (714) 316-0591

Contact Me     Apply Now

9

33.     Tan is the registered agent and broker for Central Funding.[10]

34.     Plaintiff Moore is not looking to sell a property and she is not looking to purchase one.

35.     Plaintiff Moore never provided her cell phone number to Central Funding or any of its affiliated agents or real estate agents.

---

[9] https://www.thecentralfunding.com/kenny-tan/
[10] https://bizfileonline.sos.ca.gov/search/business - Centermac Realty, Inc.

10

36.     The unauthorized solicitation text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Moore in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

37.     Seeking redress for these injuries, Plaintiff Moore, on behalf of herself and Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

38.     Plaintiff Moore brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Central Funding texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.

39.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Moore anticipates the need to amend the Class definition following appropriate discovery.

40.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

41.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)    whether Defendant Central Funding sent multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text;

(b)    whether the text messages constitute a violation of the TCPA;

(c)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

42.    **Adequate Representation**: Plaintiff Moore will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Moore has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Moore and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Moore nor her counsel have any interest adverse to the Class.

43.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Moore. Additionally, the damages suffered

by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Moore and the Do Not Call Registry Class)**

44.     Plaintiff repeats and realleges paragraphs 1-43 of this Complaint and incorporates them by reference herein.

45.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

47.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Moore and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

48.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Moore and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

49.    As a result of Defendant's conduct as alleged herein, Plaintiff Moore and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

50.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)    An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b)    An award of money damages and costs;

c)    An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)    An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e)    Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Moore requests a jury trial.

**RUTH REGINA MOORE**, individually and on behalf of all others similarly situated,

DATED this 9th day of December, 2024.

By: /s/ *Bradley G. Kirk*

Bradley G. Kirk
bgkirklaw@gmail.com
Attorney at Law
1910 Madison Avenue, #112
Memphis, TN 38104
(901) 206-6163

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*